In re the Estate of VICENTE PANGELINAN HERRERO
a.k.a. VICENTE P. HERRERO, Appellee
HELEN HERRERO PEREZ, Appellant

Civil No. 35-A

District Court of Guam

Appellate Division

December 26, 1962

Counsel for Appellee:     J. C. ARRIOLA
Counsel for Appellant:     FINTON J. PHELAN, JR.

Before SHRIVER, *Judge*, District Court of Guam; KINNARE, *Associate Judge*, High Court of the Trust Territory of the Pacific Islands and DUENAS, *Judge*, Island Court of Guam

PER CURIAM

## OPINION

Vicente Pangelinan Herrero, a former resident of Guam, died testate in California where his will was probated. The testator had property in Guam, and an administratrix was

appointed with the will annexed. The appellant filed a petition in the Island Court for an accounting, determination of heirship, and objection to distribution on behalf of herself and other alleged heirs similarly situated, in which she contended that the petitioners were entitled to share in the decedent's estate for the reason that they had interests in the estate by virtue of the property interests of Alice Webb Herrero, the first wife of the decedent who died in 1936. The basic contention is that the Civil Law of Spain was in effect in Guam until 1933; that under that law a system of forced heirs gave the children of the first marriage vested rights in the conjugal property; that such vested rights could not be taken away without violating prohibitions against the taking of property without due process of law. The Court below filed a memorandum opinion, with which we are in accord, disposing of these contentions.

It is unquestioned that the first wife died in 1936. As of May 1, 1933, a new Probate Code became effective in Guam. Section 200 of that Code provides:

"Succession" is the acquisition of title to the property of one who dies without disposing of it by will.

Section 201 provides:

Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the following provisions.

Under the clear terms of this statute the husband, in the absence of testamentary disposition by the deceased wife, became the sole owner of the community property.

It is clear that neither the common law nor the civil law will be resorted to in order to determine who takes property of a decedent in a situation covered by the statute, 16 Am.Jur. 785.

In support of this view, Am.Jur. cites *Harrison v. Harrison*, 21 N.M. 372, 155 P. 356, L.R.A. 1916E, 854, a former civil law jurisdiction, wherein the Court stated that the statute was intended to provide for the distribution of all intestate estates and, since 1852, "it has not been necessary here to resort to either the civil or common law to determine who takes the property of decedents." We hold, as did the Court below, that in 1936 the provisions in the Probate Code governed the descent and distribution of the community property and that it is not necessary to go behind the statute.

The appellant refers us to Civil Case No. 6-55, District Court of Guam, entitled *Felix Calvo v. Juan T. Martinez, et al.* Regardless of the merit or lack of merit of that opinion, it is of no help in this case. In *Calvo* the claim was made that the mother died in 1929 when the Civil Law was in effect; that under that law Felix Calvo had been vested with certain property rights as a forced heir of the deceased mother. The father had been permitted to manage the conjugal estate until his death. He made a will in which he willed the property to one heir, to the exclusion of the other. The father had never remarried and Felix Calvo was not guilty of laches in not enforcing his rights sooner, for the reason that it was to be expected that the father would deal fairly with his children. The basic distinction between *Calvo* and the instant case is that in *Calvo* the rights of forced heirs vested immediately upon the death of the mother. In this case the law had been changed prior to the death of the mother. To hold that forced heirs acquired vested rights at the time of their birth to any property in existence or to be acquired by their parents would lead to utter confusion in land titles and would prevent the sovereign from making the necessary statutory changes to modernize the laws of descent and distribution. Most assuredly, the appellant has been guilty of laches, taking no steps to

protect any interest she may have had until after the death of the decedent in 1956. The decedent had remarried and had children by the second marriage. We affirm.